UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

JUAN ALBERTO GARZA, JR.,

        Plaintiff,

v.

MICHAEL BURGESS et al.,

        Defendants.
_____/

Case No. 1:25-cv-48

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate Order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about

which he complains occurred at that facility. Plaintiff sues ECF[1] and the following ECF staff: Warden Michael Burgess, Resident Unit Manager T. McColl, Assistant Deputy Warden J. Erway, and A-Unit Chief M. Ensing. (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he alleges that he "was placed in segregation against [his] will," claiming that "ECF had no reason to have [him] in segregation."[2] (*Id.*, PageID.3.) Specifically, Plaintiff states that he was transferred to ECF on July 25, 2024, and, at that time, he was placed in segregation, and he remained there for 30 days. (*Id.*) Plaintiff claims that he was first told that "they didn't know why [he] was even in seg[regation]," and a week later, he was told that "it was for the Start Program,"[3] but Plaintiff did not receive a referral to the program until August 5, 2024, and he was "not accepted or moved until a month later." (*Id.*)

Plaintiff alleges that MDOC Policy Directive 04.05.120 provides "the rules the facility has to follow and can use to place a prisoner in segregation and [he] did not fit the criteria." (*Id.*). Plaintiff also alleges that because of his "serious mental illness," he "could not be in segregation." (*Id.* (emphasis omitted).) Additionally, Plaintiff claims that "prison documents were manipulated to make it seem they had a valid reason to put [him] in seg[regation]." (*Id.*) Specifically, Plaintiff explains that he was "found not guilty" of a class I misconduct charge on July 21, 2024, while at

---

[1] In the case caption of the complaint, Plaintiff identifies ECF as "Oakland Correctional Facility," rather than "Oaks Correctional Facility" (Compl., ECF No. 1, PageID.1); however, when listing the Defendants in this action, Plaintiff correctly identifies ECF as "Oaks Correctional Facility." (*Id.*, PageID.2.) Therefore, it is clear that Plaintiff's reference to "Oakland Correctional Facility" was a typographical error.

[2] In this opinion, the Court corrects the capitalization in quotations from Plaintiff's complaint.

[3] The Court has previously recognized that Start Units are programs designed to provide an alternative to administrative segregation for those inmates who, *inter alia*, have been diagnosed with serious mental illnesses. *See Medina-Rodriguez v. Frank*, No. 1:22-cv-471, 2022 WL 17038113, at *2 n.2 (W.D. Mich. Nov. 17, 2022). "Inmates are classified according to stage, with corresponding restrictions." *Id.*

Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan, and Plaintiff claims "that's proof enough that [he] wasn't suppose[d] to be at [ECF] in segregation." (*Id.*, PageID.4; Misconduct Report, ECF No. 1-1, PageID.9.) Plaintiff also claims that his "security classification notice" "was manipulated with two class one[] [misconduct charges from LCF] that were not heard on [the listed dates in July of 2024]." (Compl., ECF No. 1, PageID.4; ECF No. 1-1, PageID.12.) Instead, Plaintiff states that he "actually got those tickets on 6-27-24." (Compl., ECF No. 1, PageID.4.) Plaintiff attached copies of two class I misconduct reports from LCF to his complaint, which indicate that he was charged with the following class I violations on June 27, 2024: "possession of dangerous contraband"; and "sexual misconduct (exposure)." (ECF No. 1-1, PageID.13, 14.) Plaintiff also attached a copy of a "program classification report," which indicates that upon arrival at ECF on July 25, 2024, Plaintiff was placed on "TSEG Status."[4] (*Id.*, PageID.15; *see* Compl., ECF No. 1, PageID.4.)

During Plaintiff's 30-day placement in segregation at ECF, he alleges that he "suffered mental and physical anguish." (*Id.*) At an unspecified time, Plaintiff "was denied power to [his] CPAP machine which [he has] a medical detail for." (*Id.*) Further, at an unspecified time, Plaintiff went on a hunger strike, which he claims was "not acknowledged." (*Id.*)

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise the following claims pursuant to 42 U.S.C. § 1983: Eighth Amendment claims, Fourteenth Amendment due process claims, and claims regarding violation of MDOC policy. As relief, Plaintiff seeks monetary damages. (*Id.*, PageID.5.)

---

[4] Plaintiff does not define "TSEG," but this appears to be a reference to temporary segregation. (*See* Grievance Form, ECF No. 1-1, PageID.11 (responding to Plaintiff's grievance and stating that Plaintiff was "transferred to ECF on temporary segregation pending a START referral").)

3

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    A.    **Defendant ECF**

Plaintiff names ECF as a Defendant. (Compl., ECF No. 1, PageID.2.) However, as this Court noted in *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934 (W.D. Mich. Oct. 28, 2013), "individual prisons named as Defendants . . . (ICF, IBC, LRF and RGC) are buildings used by the MDOC to house prisoners. They are not the proper public entity for suit." *Id*. at *7; *see also Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) ("The McCracken County Jail is not a legal entity susceptible to suit . . .[; i]t is a department of the county . . . ."); *Caruthers v. Corr. Medical Serv., Inc.*, No. 1:10-cv-274, 2010 WL 1744881, at *1 (W.D. Mich. Apr. 27, 2010) ("The Duane Waters Hospital is not an entity capable of being sued. Rather, it is a building owned by the Michigan Department of Corrections."); *Poole v. Michigan Reformatory*, No. 09-CV-13093, 2009 WL 2960412, at *1 (E.D. Mich. Sept. 11. 2009) ("Plaintiff names the Michigan Reformatory, the Earnest C. Brooks Correctional Facility, and the Macomb Correctional Facility as defendants in this action. Those entities, however, are institutions operated by the MDOC and are not . . . legal entities subject to suit . . . .").

Moreover, § 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But neither the State of Michigan nor the MDOC is a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person."). And, because ECF is not an entity separate from the MDOC, it is also not a "person" under § 1983. *See, e.g.*, *Tinney v. Detroit Reentry Center*, No. 2:19-CV-10894-TGB, 2020 WL 4334964, at *2 (E.D. Mich. July 28, 2020) (stating "[a] state prison facility is not a person . . . capable of being sued under § 1983");

*Ward v. Healthcare Clinic*, No. 16-10646, 2016 WL 3569562, at *1 (E.D. Mich. July 1, 2016) (same); *Poole*, 2009 WL 2960412, at *1 (same).

For these reasons, Plaintiff's claims against ECF will be dismissed for failure to state a claim.

### B.    Failure to Name Individual Defendants in the Body of the Complaint

As explained below, Plaintiff fails to allege sufficient facts showing how Defendants Burgess, McColl, Erway, and Ensing, all of whom Plaintiff identifies as officials at ECF, were personally involved in the violation of his constitutional rights. (*See generally* Compl., ECF No. 1.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff does not name any individuals in the body of his complaint. (*See* Compl., ECF No. 1, PageID.3–4.) The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). And,

"[s]ummary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Plaintiff refers only to "they" in his complaint, and this is insufficient to show that Defendants Burgess, McColl, Erway, and Ensing were personally involved in the alleged violations of Plaintiff's constitutional rights. And, Plaintiff's claims against Defendants Burgess, McColl, Erway, and Ensing fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Accordingly, for this reason alone, all of Plaintiff's claims against Defendants Burgess, McColl, Erway, and Ensing are subject to dismissal for failure to state a claim.

### C.    Merits of Plaintiff's Claims

Even setting aside the above-discussed reason for dismissing Plaintiff's case (i.e., Plaintiff's failure to name the individual Defendants in the body of the complaint) and addressing the merits of Plaintiff's claims, the action is still subject to dismissal for failure to state a claim.

#### 1.    Fourteenth Due Process Claims

The Court first construes Plaintiff's complaint to raise Fourteenth Amendment procedural and substantive due process claims regarding his placement in segregation at ECF for 30 days. (*See* Compl., ECF No. 1, PageID.3.)

##### a.    Procedural Due Process Claims

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a

procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

As an initial matter, the United States Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228–29 (1976). Further, the Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum*, 427 U.S. at 225.

In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim*, 461 U.S. at 250.

Here, Plaintiff does not allege that his placement in segregation at ECF affected the duration of his sentence, and, as explained below, he fails to show that his placement in segregation constituted an "atypical" and "significant deprivation." *Sandin*, 515 U.S. at 484. In *Sandin*, the Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only lengthy periods of segregation, such as periods lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest).

Here, Plaintiff alleges that he was placed in segregation at ECF for 30 days. (Compl., ECF No. 1, PageID.3.) As discussed above, the Supreme Court has concluded that placement in segregation for 30 days does not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Under these circumstances, Plaintiff fails to allege any facts to show that he was held in segregation for a period of time that would constitute an atypical and significant deprivation.

Accordingly, for the reasons set forth above, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding his placement in segregation.

        **b.**    **Substantive Due Process Claims**

To the extent that Plaintiff intended to raise a substantive due process claim regarding his placement in segregation at ECF, as explained below, he fails to state such a claim. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't*

9

*of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, Plaintiff claims that "prison documents were manipulated to make it seem they had a valid reason to put [him] in seg[regation]." (Compl., ECF No. 1, PageID.3.) Specifically, Plaintiff explains that he was "found not guilty" of a class I misconduct charge on July 21, 2024, while at Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan, and Plaintiff claims "that's proof enough that [he] wasn't suppose[d] to be at [ECF] in segregation." (*Id.*, PageID.4; Misconduct Report, ECF No. 1-1, PageID.9.) Plaintiff also claims that his "security classification notice" "was manipulated with two class one[] [misconduct charges from LCF] that were not heard on [the listed dates in July of 2024]." (Compl., ECF No. 1, PageID.4; ECF No. 1-1, PageID.12.) Instead, Plaintiff states that he "actually got those tickets on 6-27-24." (Compl., ECF No. 1, PageID.4.)

Although Plaintiff claims that "prison documents were manipulated," in his complaint, Plaintiff acknowledges that despite being found not guilty of one class I misconduct charge at LCF, he was found guilty of two class I misconduct charges at LCF; Plaintiff claims that the "hearing dates" listed on the "security classification notice" for the convictions are incorrect, but in the complaint, he states that he was in fact convicted of two class I misconduct charges for violations that occurred on June 27, 2024. (*Id.*) Under these circumstances, the facts alleged in the

10

complaint fall short of showing the sort of egregious conduct that would support a substantive due process claim. *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X*, 175 F.3d at 388; *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016).

Accordingly, any intended Fourteenth Amendment substantive due process claims will be dismissed.

### 2. Eighth Amendment Claims

The Court also construes Plaintiff's complaint to raise Eighth Amendment claims regarding his placement in segregation at ECF. (*See* Compl., ECF No. 1, PageID.3–4.)

The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotation marks omitted). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

In order for a prisoner to state an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25,

11

35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

As relevant to Plaintiff's claims regarding his placement in segregation, placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). And, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U.S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795.

Furthermore, as to Plaintiff's allegations that while he was in segregation, he was "denied power to [his] CPAP machine" on an unspecified occasion and that he "went on a hunger strike" that was "not acknowledged," assuming, without deciding, that these allegations satisfy the objective component of the relevant two-prong test, Plaintiff fails to allege any facts to show that Defendants had any involvement in, or knowledge of, the power issue that affected Plaintiff's CPAP machine and Plaintiff's hunger strike at the times they occurred. Plaintiff therefore fails to

12

satisfy the subjective component because he fails to show that Defendants knew of a substantial risk of harm to him, let alone that they knew of this risk and disregarded it.

Moreover, to the extent that Plaintiff seeks to hold Defendants Burgess, McColl, Erway, and Ensing liable due to their supervisory positions (*see, e.g.*, ECF No. 1-1, PageID.11, 12, 15–17, 19–20 (attaching grievance responses and security classification notices from ECF to the complaint)), government officials, such as Defendants Burgess, McColl, Erway, and Ensing, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). And, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendants Burgess, McColl, Erway, and Ensing encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. And, conclusory allegations of supervisory responsibility are insufficient to show that these Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888.

Accordingly, for all of the reasons set forth above, Plaintiff's Eighth Amendment claims against Defendants will be dismissed for failure to state a claim.

### 3. Section 1983 Claims Regarding Violation of MDOC Policy

Plaintiff alleges that MDOC Policy Directive 04.05.120 provides "the rules the facility has to follow and can use to place a prisoner in segregation and [he] did not fit the criteria." (Compl., ECF No. 1, PageID.3.) The Court construes this allegation to raise a § 1983 claim that Defendants violated MDOC policy.

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated MDOC policy fails to state a claim under § 1983.

Moreover, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely

have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants violated prison policy fails to raise a cognizable federal claim.

Accordingly, for the reasons set forth above, Plaintiff's § 1983 claims regarding the violation of MDOC policy will be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:   January 31, 2025             /s/ Jane M. Beckering
                                      Jane M. Beckering
                                      United States District Judge